### A09A1632. GREEN v. THE STATE.
(686 SE2d 271)

JOHNSON, Presiding Judge.

A jury found Curtis Green guilty of hijacking a motor vehicle, aggravated assault, and aggravated sexual battery. The jury was unable to reach a verdict as to a charge of rape, and the trial court granted a mistrial as to that count. Green appeals from his conviction, alleging that the trial court erred in (i) failing to strike a prospective juror for cause, (ii) instructing the jury as to where the alleged crimes took place, (iii) denying his motion for a directed verdict based on his claim that the state failed to establish venue, and (iv) allowing evidence to be presented that he was stopped in a stolen vehicle belonging to the victim of a similar crime. Green also claims that he received ineffective assistance of counsel. For the reasons set forth below, we discern no reversible error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[1] We do not weigh the evidence or consider witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

So viewed, the evidence shows that on the evening of April 18, 2002, the nineteen-year-old victim, M. M., went to a club in the Buckhead section of Atlanta with two friends. Shortly after midnight, the victim left the club and began walking to the lot where her friend's car was parked. As the victim approached the car, a man whom she later identified as Green approached her, pulled out a gun, and demanded that she get into the car with him. When the victim resisted, Green hit her in the head with the butt of his gun and shoved her into the car. Green then drove the victim to a nearby residential area, stopped the car, and demanded that she remove her clothes. When the victim resisted, Green ripped off her clothes and committed the acts that served as the basis for his aggravated sexual assault conviction. After the assault, Green forced the victim out of

---

[1] *Hall v. State*, 292 Ga. App. 544, 545 (664 SE2d 882) (2008).

[2] Id.

the car while she was still naked, and he drove away.

1. Green first argues that the trial court erred in failing to strike a prospective juror for cause because her responses allegedly indicated she could not be fair and impartial. Before a juror can be disqualified for cause, however, "it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence."[3] In addition, the decision to strike a juror for cause lies within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of discretion.[4]

Here, one of the prospective jurors stated that she worked with victims of crime in her practice as a psychologist and reported that she "believe[d]" she had "somewhat of a bias." The juror responded affirmatively when the trial court asked if she would be able to base her decision in the case only on the evidence presented, and she responded negatively when defense counsel asked if her bias was "so fixed that it would affect [her] decision once [she] heard the evidence." Given that the voir dire testimony shows that the prospective juror had not formed an opinion on Green's guilt or innocence that was so fixed and definite that she would be unable to set aside any bias, the trial court did not abuse its discretion in failing to strike the prospective juror for cause.[5]

2. Green also claims that the trial court erred in instructing the jury as to where the alleged crimes took place. During voir dire, the trial court stated that the crimes allegedly took place "near the intersection of Peachtree Road and Pharr Road in the Buckhead section of [Atlanta]" and asked if any jurors were familiar with that area. Green claims that the trial court, in making this statement, improperly relieved the state of its obligation to establish venue and thereby violated OCGA § 17-8-57.

Even if we agreed that the trial court's statement could be interpreted as an expression of its opinion on the establishment of venue, Green did not raise any objection to the statement at trial, and he has therefore not preserved the right to object to it on appeal.[6]

3. Green alleges that the trial court erred in denying his motion for a directed verdict of acquittal based on his claim that the state failed to establish venue. Here, Green notes that the victim did not

---

[3] *Rocha v. State*, 248 Ga. App. 53 (1) (545 SE2d 173) (2001).

[4] Id.

[5] *Dixon v. State*, 285 Ga. 312, 317 (3) (677 SE2d 76) (2009).

[6] *Walker v. State*, 258 Ga. 443, 444 (3) (a) (370 SE2d 149) (1988) (the question of whether OCGA § 17-8-57 has been violated is not reached unless an objection or motion for mistrial is made).

testify as to the exact location where the sexual assault took place, but rather testified as to the number of turns the assailant made after they left the parking lot. However, the police officer who investigated the incident testified that the crimes occurred in Fulton County. This evidence was sufficient to establish venue.[7]

4. Green also claims that the trial court erred in allowing a police officer to testify that Green was stopped in a stolen vehicle belonging to the victim of a similar crime. Green alleges that the testimony was inadmissible hearsay because the officer had not been present when Green was stopped.

At trial, evidence was presented of a similar crime that occurred in the Buckhead community shortly after midnight on April 20, 2002. There, the victim met a man whom she later identified as Green approximately two-tenths of a mile from the parking lot where M. M. had first seen her assailant the previous night. The man told her that his name was Curtis, that he was an Aquarius, and that he was from New York.

After talking for a while, the victim went to a club with the man and later allowed the man to drive her car and show her around Atlanta. When the man drove back to Buckhead, he parked the car in a residential area and ordered the victim to remove her clothes. When the victim resisted, the man pulled out a gun, ordered her to get in the back of the car, and ripped her clothes off. After raping the victim, the man drove off in her car and left her naked by the side of the road.

At trial, a police officer who included Green's picture in a photographic lineup presented to M. M. testified that Green was stopped while driving the car owned by the victim of the similar transaction. The trial court allowed the evidence to be admitted, concluding that it explained the conduct of the officer in preparing the photographic lineup.

Pretermitting whether the trial court erred in allowing the police officer's testimony, its admission was harmless in light of the overwhelming evidence of Green's guilt.[8] First, Green was identified by M. M. as the person who assaulted her. In addition, the victim of the similar transaction, who spent a considerable amount of time with her attacker prior to being raped, positively identified Green as her assailant. Green was also identified by an off-duty police officer who refused to allow the similar transaction victim and her assailant to enter a nightclub after the assailant presented him with what the officer determined was a fake identification card. In addition, evi-

---

[7] *Jones v. State*, 220 Ga. App. 161, 162 (2) (469 SE2d 300) (1996).

[8] See *Richards v. State*, 222 Ga. App. 853, 856 (3) (476 SE2d 598) (1996).

dence was presented that, just as the assailant named "Curtis" described himself to the similar transaction victim, Green was from New York, and a police officer testified that Green was born on January 22, 1971, "which would make him an Aquarius." As a result, even if the admission of the testimony was erroneous, it is highly improbable that its admission contributed to the guilty verdict, and we find no reason for reversal on this ground.[9]

5. Finally, Green claims that he received ineffective assistance of counsel in that his trial counsel failed to call Green's girlfriend as an alibi witness and failed to object when investigating detectives testified that the pictures used in photographic lineups were generally obtained from "jail" or "arrest" photographs.

To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (i) that counsel's performance was deficient, and (ii) that the deficiency prejudiced the defense to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.[10] The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[11] In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[12] We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court could not reliably have produced a just result.[13]

At the hearing on Green's motion for new trial, Green's girlfriend testified that she and her 12-year-old daughter were sharing a local hotel room with Green the night of the incident and that Green did not leave the room the entire night. However, Green failed to present any evidence that he or his girlfriend, who admitted to having several conversations with trial counsel, ever informed trial counsel that the girlfriend could provide Green with an alibi. Because it appears that trial counsel did not know that Green's girlfriend could serve as an alibi witness, the trial court was authorized to find that trial counsel's performance was not deficient

---

[9] See id.

[10] *Rivers v. State*, 283 Ga. 1, 4 (3) (655 SE2d 594) (2008).

[11] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[12] *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999).

[13] *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).

for failing to call her to testify in Green's defense.[14]

Green also claims that trial counsel was ineffective in failing to object when investigating detectives testified as to the origin of the lineup photographs. At trial, the investigating detective who selected the photographs for the first lineup presented to M. M. testified that the photographs he selected were of people who were in jail, and that "[m]ost of the guys that we pick are in jail or got out [of jail]." Green's photograph was not included in this lineup, or any of the first three lineups presented to M. M. The officer who prepared the fourth lineup testified that the procedure used for preparing a lineup involves "a general booking system [that includes photographs of] people who have been arrested throughout the years." The fourth lineup included a photograph of Green, and it was this photograph that M. M. selected as the photograph of her assailant.

The Supreme Court of Georgia has held that testimony explaining the process of using "jail" or "arrest" photographs to create a lineup is insufficient to place a defendant's character at issue.[15] Given that the failure to make a meritless objection is not evidence of deficient performance of trial counsel, the trial court did not err in concluding that Green failed to establish that he received ineffective assistance of counsel.[16]

*Judgment affirmed. Ellington and Mikell, JJ., concur.*

DECIDED OCTOBER 7, 2009 —
RECONSIDERATION DENIED NOVEMBER 2, 2009.

*Peters, Rubin & Reynolds, M. Paul Reynolds*, for appellant.
*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Assistant District Attorney*, for appellee.

---

[14] *Escobar v. State*, 279 Ga. 727, 730 (5) (620 SE2d 812) (2005).

[15] *Taylor v. State*, 272 Ga. 559, 561 (2) (b), (c) (532 SE2d 395) (2000).

[16] See *Hardnett v. State*, 285 Ga. 470, 477 (7) (678 SE2d 323) (2009).